Chief Justice Robertson,
de'ii.eml thp opinion of the Court.
Tins is an action of covenant brought by the defendant against the plaintiffs in error, as heirs, on the covenant of their ancestor, expressly binding them.
The declaration averred that estate sufficient to pay the damages sued for, had deprended to the plaintiffs in error, from their ancestor. They pleaded that nothing had ever descended to them, and having concluded to the country, an issue was joined by a similiter. The jury found that estate of the value of $649 had descended, and assessed the damages at that sum, for which judgment was rendered to be levied of the estate of the plaintiffs. They prosecute this writ of error to reverse that judgment.
At common law, an heir, though expressly bound by the covenant of his ancestor, was responsible only for the value of the estate which had descended; and even though estate had descended to him, he was not liable at all, if he had alienated it prior to the impetration of the writ sued out against him, on his ancestor’s covenant. Hence, if he had alienated the estate before the commencement of the suit *352 against him, he might have exonerated himself alto1gether, hy pleading that he had no estate by descent, at the date of the writ.
Statute 1796, l. Dig 627, oomm mUtw relative to the liability did^not alter” the mode of pleading.
Act of 1811 I. Dig. 683. heirs^asw-ell as adminislators & ox. relieves 'from the common qnenceíTof face an i iiidgment y e au .
A statute of W and M. similar to that of this state, enacted in 1796, I Dig. 627, modified the common law doctrine and subjected heirs to liability, on such covenants of their ancestors as bound them, for the value of the estate descended, and which had been alienated prior to suit brought, But the mode of pleading was not changed; and, therefore, an heir might, after the enactment of those statutes, as before, plead, news per descent, at the date 0j ijie writ. But the plaintiff might reply that estate had descended to the heir. As an issue made up on such a replication to such a plea, virtually implied, that if estate had ever descended, it had been alienated, the jury was required, on such an issue, to ascertain the value of the estate which had descended, and judgment was rendered on such a verdict, personally against the heir, according to the value assessed.
According to the common law also, executors, administrators, and heirs were responsible, personally, for a default or false plea, either of which, was supposed to admit assets or estate. To exonerate himself from the penalty of a default or false plea, an heir, to whom some estate had descended, might confess the action and set forth the estate which had descended to him, and then, unless it was shown by the plaintiff, that other estate had also descended, the judgment ivas rendered only against the estate so disclosed.
An apt of 1811, I Dig. 535, which, among other things, declares that executors or administrators sbaM not be mac'e liable, in consequence of any default or false plea, beyond the amount of assets, dedares also, that its provisions, as far as they may be aPPlicab!e’ shaI1 aPP!y to heirs.
In Carneal’s heirs vs. Day, II Littell, 397, this-court decided that the act of 1811 applied to deagainst heirs, who were sued with the personal representatives under the statute .authorizing such a j0jn{. suit.
Since the act of 1811, heir is.not resP‘',rrthe estate ties. cencled, tho’ ” judgment by & judgment should he to subject that estate only.
in Philips vs. Munsell, (M. S. S.) this court deelded also that the act applied to judgments by default against heirs on, covenants, by their ancestors, expressly binding them.
in both cases it was decided, of course, that the judgment should be rendered to be levied of the estate descended. . •
We cannot perceive why, if the act of 1811 be applicable, in any case, to heirs, it should not apply to them, as to executors, in all cases in which, for false plea or default, they were liable, prior to 1811, de bonis propriis. If the letter or reason of the first section apply to them in any case, they both equally apply to them in all cases of default and of false pleading, excepting only a case in wdiich it should be found expressly or constructively by verdict, on a proper issue for that purpose, that assets had descended, and had been alienated; in which last case a judgment to be levied of the estate descended, would be nugatory, and therefore improper.
When a judgment by default is rendered against an heir, he is not, since the act of 1811, liable beyond the estate which had descended to him, and the judgment should go against that estate only, Why should any other judgment be rendered in this case? not because the plea was false, for an executor or administrator is not now liable to any other kind of judgment, merely in consequence of a false plea, and the act of 1811 applies, in that particular, to heirs also. The 1st section of that act is the only part of it which has been construed to apply to heirs; and we can perceive no reason for qualifying its application, nor would we be able to define its application to heirs, unless it shall apply to them precisely as it would to personal representatives, under similar circumstances. The Legislative department saw fit to declare that, as to the consequences of a default or mispleading, or false pleading, heirs and personal representatives should stand on the same ground. Our province is to give full and practical effect to the plain and express will of the legislature, constitutionally declared; and it seems to us that we would be assuming legislative *354 power instead of exercising the judicial function, were we to declare that the 1st section of the act of 1811, shall not he applied to heirs, co-ex'tensively with its application to executors and administrators.
Act of ISI1, I. Dij;. 535 construed & applied.
Same jutlgb^reníererf upon verdict vs. heirs upon pica of rins per descent, winch would be rendered vs. executor or administrator upon pica ofplene found vs. them. Joint judgment v°. several heirs, all insolvent hut administravit one,he'would not be liable for the whole
if estate have been alienatmav'suif ect heir personally by proceedings on judgment vs. i state uescfnded and (•rovmg alienation.
*354 We think that when applied to heirs, it should be read bv omitting “executors and administrators” and inserting in lieu thereof, “heirs,” and that consequently, whenever, according to that section, it would he proper to render a judgment against a personal representative, to be levied of the assets, it-would be equally proper, under the like circumstances, in the case of an heir, to render the judgment to he levied of the estate descended.
When a plea of plene administmvit is found untrue, aT1<I amount of assets is assessed, judgment should, nevertheless, he rendered, de bonis testatoris; and this was even the common law doctrine: II Sanders’s Reports, 336, a. n. 10. Whv should not the same rule 'turn apply to an ordinary issue on riens per descent? a verdict, against an heir, upon such an issue, does not imply that the estate had been alienated; and he ought to he permitted to exonerate himself by surrendering it in execution, because it might not sell for as much as its assessed value, and if it should not, he ought not tobe subjected to personal Joss The estate descended, and nothing more, should be required of him. The value of that estate was not, prior to 1811, involved in such. an issue as that tried bv the jurv in this case: Jefferson vs. Morton et al. IT Sanders’s Reports 7, n. 4. _And, therefore, thp verdict was inconclusive as to the value of the estate; and the onlv consequence of its assessment was, fas it would have been in the case of an executor on a plea of no assets,) that the judgment could not have exceeded the amount of it. The judgment is joint. Suppose that all the heirs except one were insolvent, ought that one to he personally responsible for the whole judgment? We think not.
It may be objected that the heirs may have alienated the estate. The same objection would apply ecluaHy to a judgment by default; and it is now too late to doubt that a judgment by default should, in *355 the first instance,, be rendered only against the estate descended. If, in any case, the estate shall have been alienated, the creditor might iiave an effectual remedy by an appropriate proceeding on the judgment; in which, by proving, in a proper manner, the alienation, ne might, as ui-the case of a devastavit, subject me heirs 10 personal responsibility for the value oí the estate so alienated. If this would be circuitous and inconvenient in one ciaas of caaes, it would be equally so m any otiier class. And it ■would oe as eun rand as eliectual in such a case as this, as it would be li tne judgment had been by-default.
In j’oint notion vs' personal representative and heir not expressly bound,judgment to be rendered vs. aJl in the same way.
The object of the act of 1S11 was to relieve executors and heirs from the rigor of the common law. The 1st section applicable to heirs, whenever in like case it would apply to executors or administrators.
If upon proper issue verff diet do not find the estate assessed to have been alienated, judgment must go vs. estate descended, net de bonis jiro* priis,
In a joint suit against the personal and real representatives (tile latter not being expressly bound,) the judgment mould be rendered against them all m the sanie way. The statute oí IB 1 i has not discriminated between an netr expressly liable on his ancestor's covenant, and one who may be charged only-in a joint suit with the personal representative. And it seems to us that every reason or principle of justice which can be applied to the one, is equally applicable to tne other. A verdict against the one by deiault, or otherwise, cannot import more, and therefore, should not operate in any other manner than a similar finding against the other.
The object of the act of 1811, was to relieve personal representatives^and heirs from the rigor of the common law, in cases of default and false pleading; and, in that respect, to change the common law doctrine and practice. And we believe that a reasonable and consistent interpretation of the statute, will render all the provisions of the 1st section applicable, in substance, to heirs, whenever, in the like case, they would apply to executors or administrators.
Wherefore, we are of the opinion, that, as the verdict in this case did not ascertain, (on a proper issue for that purpose,) that the estate assessed had been alienated, the judgment tie boms propriis was erroneous.
IJiüsent.
Talbot and Lyle, for plaintiffs.
And therefore, the judgment is reversed, and the cause remanded, with instructions to render judgment, to be levied of the estate descended.
Judge Underwood

delivered the following opinion, dissenling from the decision of the court.

At common law, the heir is liable for all the obligations of his ancestor, in which he is expressly bound. The liability is not absolute. It is conditional, subject to be limited by tne value of the real assets descended. But notwithstanding this restriction, the debt which devolves upon the heir is technically in the eye of the law, his own proper debt, and he is to be sued for it as such. He is to be sued for it in the debet and detinet as for his own debt, tie is not charged as tenant of the land descended. As, however, it would be unjust to compel the heir to pay a debt when Ins ancestor had left him nothing to pay with, or to make him pay the whole debt, ■$>hen the estate descended is worth only part of the amount, the law wisely provided that he might avoid liability beyond what strict justice required, by pleading either riens per descent, which if true, exonerated him altogether, or “to confess the action and show the certainty of assets,” by plea, whereby the assets descended were specifically subjected, and tne heir relieved from further liability. Under these rules an honest heir had a plain road pointed out, by which he might escape from every thing like injustice. If the heir did not take this road, but pursued, under the suggestions of fraud and avarice, a devious by path, the law punishes his iniquity by subjecting him personally to the. payment of the whole debt, no matter whether the estate descended was of value sufficient to pay it or not. Thus, if the heir was sued for $1000 on the obligation of his ancestor, and he falsely jilead nothing by descent, and it turned out that estate of tiie value of $100 only had descended, he was subjected personally to the payment of the whole $1000. If the heir he sued 1'or the debt of his ancestor, and he permits “judgment to be given by dejault, or nil dicit, or conjession, or on any other matter or gromd whatsoever, *357 without confessing and showing the certainty of assets, the plaintiff shall have execution of his other land or of his goods or of his bod}', as he should have for the debt of the heir himself on his own bond.” Davy vs. Pepys, Plowden, 440. See also the various authorities in support of the text referred to in note 4, II Sanders, 7; and where all of the foregoing positions will be found to be fully supported by authority.
Dissent
The plea of riens per descent related to the time of instituting the suit against the heir. If at that time, he had nothing which had descended to him fj om his ancestor, his plea was true, although lie may have inherited a large estate, provitled in good faith h.e alienated it, before suit brought. The consequence was, that the heir was exonerated at law, whatever liability might still rest upon him in chancery. This doctrine put it in the power of heirs to delay and trifle with creditors by alienating the lands descended. In England this evil was remedied by the-statute of III and IV W. and M. c. 5, s. 5, from which the 4th and 5th sections of our act of 1796, 1 Dig. 627, iiave been almost literally taken. If the heir had alienated the estate before suit brought and plead riens per descent, and the plaintiff replied according to the provisions of these statutes in order to avoid the effect of the alienation before suit brought, and the issue was found for the plaintiff, then he could only recover the value of the land sold by the heir, and not his whole debt, if the value did not come up to it. In proceeding under these statutes it was necessary that the jury should assess the value of the land alienated, and for the value so assessed, judgment was properly rendered against the heir in personam. Thus stood the law until 1811, and it is worthy of remark that in every instance judgment was properly rendered in personam aaaiust the heir, unless he confessed the action and showed the assets descended with certainty in his plea. In that event judgment went against the assets. Now in this case it is clear that the heirs Iiave jilead a false pl.ea, they iiave not pretended to show the certainty of assets, and therefore upon the principles of the common law judgment should be personally render- *358 eel against them for the whole amount of the debt of their ancestor.
Dissent.
The question then is, how far has the act of 1811, I Dig. 534, changed the law, which would, but for that act, govern the case? The 4th section of the act provides that “the heir or heirs of a deceased person shall be entitled to- receive the benefit of all and every of the provisions aforesaid, relating to executors and administrators, as far as the same are applicable.” It becomes necessary, therefore, to en-quire into the law relative to executors and administrators, in order to ascertain the true application of the statute of 1811, to the case of heirs.
The obligation of a testator does not devolve upon the executor, so as to make it the executor’s debt. The executor being a mere fiduciary, he is properly suable in the detinet only. The law is otherwise in regard to heirs. When an executor or administrator fails to plead, or pleads any plea except such as are knowingly false, the judgment should be rendered de bonis testatoris, because the presumption is in favor of his honesty, and therefore it should be expected that he will (after the justice of the de-. mand has been settled by judgment) surrender the goods in satisfaction. The judgment, when taken by default or upon various pleas, such as non est factum testatoris, payment by him &c. amounts to a confession of assets sufficient to pay the debt; but notwithstanding this, it seems to me that there would be an impropriety in rendering the judgment against the executor de bonis propriis in the first instance; because in that event, the officer who executed the' judgment might not discriminate between the goods of the testator and the proper goods of the executor; and might, if so disposed, seize and sell the latter, which would be great injustice. Whatever may be the reason, it is certain that the law in these cases required the judgment to be entered de bonis testatoris: I Sanders, 333, note 10. But wheie the executor knowingly pleaded a false plea, such as ne unques executor', or a release to himself, and it is proved against him, then the proper manner of entering judgment according to the authorities, is, in the first place cle bonis testatoris si fyc. ct sinon fyc. 4c *359 bonis propriis. Upon this judgment execution could issue and be satisfied out of the proper goods of the executor, if no goods of the testator could he found. If it. he asked whv may not indgment be rendered in the same manner upon default, or when the executor puts in a plea not knowing it to he false, since a judgment de bonis testaloris si <$rc. et sinon Src. de bonis propriis, would supersede the necessity for a scire fieri enquiry, or an action suggesting a devastavit? I answer, that law does not anticipate fraud. It expects of a mere fiduciary, honest conduct, hut where he has been convicted of a false plea, knowing it to be such, there is then ground .to suspect him of fraud, and hence in such a case, the propriety of entering the judgment in the alternative, as above.
Dissent.
But the nicetv of pleading required in many cases by executors and administrators, especially when conducted bv inexperienced counsel, frequent.lv involved executors and administrators into the admission of assets when they were honestly endeavoring to perform their duty according t.o law^and when there Was a deficiency of assets. To obviate evils growing out. of such strictness, the act of 1811 provides in substance, that executors shall not he liable for more than the amount of assets which have or shall come to their hands on account of failing to make defence or on account of any plea pleaded. This statute did not change, nor purport to change the mode of proceeding against executors and administrators, nor to alter the manner of rendering judgments against them. The statute cannot, in general, have any effect upon the manner of entering a judgment against an executor or administrator; and it has been the uniform practice since its passage, so far as my knowledge extends, to enter judgment by default, and upon pleas false in fact, but not necessarily known 'to the executor or administrator to be such, precisely as they were entered before the passage of the statute. But after judgments are so rendered,' and when the plaintiff proceeds either by action suggesting a devastavit, or by a sciri fieri enquiry to charge the executor or administrator personally, then the statute comes in to his aid for the purpose of avoiding the conclusion. *360 which resulted by the rules of the common law from' the l'erovei‘V of the judgment in the first instance, that the executor or administrator had assets sufficient'to pay the debt; and by operation of the statute the executor or administrator is allowed to reduce his personal liability to the amount of the assets. In case the executor or administrator knowingly pleaded a false pica, in con sequence of which, upon the principles already stated, judgment would be rendered, to he levied first of the goods of the testator or intestate, and if none could be found, then of the proper goods of the executor or administrator, there might be some difficulty since the passage of the statute, in enteringa judgment, unless the amount of the assets were ascertained by the verdict; in which event the judgment, so far as it operated personally on the fiduciary, might be limited to the amount of the assets so found. But in all other cases except this, the judgment must be rendered against an executor or administrator, notwithstanding the statute, precisely as it would have been before the act passed, and the benefits resulting to executors and administrators from the act, could only be felt when they were thereafter proceeded against personally for a devastavit.
¿Mssent.
Now, it is perfectly clear to my mind, from the foregoing view of the subject, that executors and administrators were never charged personally, in the first instance, unless they were convicted of having pleaded a false jilea, knowing it to he such, and that the heir was uniformly charged, personally, whenever he permitted judgment to he entered by default against him, and more especially if he pleaded a false pica. Now, the opinion delivered in this case, makes the 4th section of the act of 1811, which does no more than confer on heirs the benefits of the previous sections, 1 as far as they are applicablechange entirely the nature of the judgment against the heir, and requires it to be entered against him, for the assets descended, when there is not a word in the act, that directs such a change, and when it is manifest, that the whole object of the act was merely to limit the recovery against executors, administrators, and heirs, to the value of the assets. Tims, the opinion *361 delivered, regards the act of 1811. as repealing .the doctrines of the common law, tinder which the heir was always charged with the debt, of his ancestor in the same manner as for his own debt, where he was expressly named in the obligation, and placing the heir iu the attitude of a mere fiduciary. I cannot consent to that construction of the statute which produces such a radical change in the law, unless the legislature had used stronger language, than merely to declare that the rules prescribed in relation to executors and administrators, should apply to heirs “us far as they are applicable.” The consequence of this construction of the statute is, that executors, administrators and heirs, are placed precisely upon the same footing, in relation to the nature of the remedy against them. The very language used in the 4th section, shews in my opinion, that the legislature never intended to produce such an entire revolution in the remedy previously existing again.-1 an heir. On the contrary, as I understand the statute, the legislature designed no more than to provide, when executors and administrators are proceeded against, with a view to render them personally liable, no recovery shall be had beyond the amount of assets; and this principle is applied to the case of heirs, by the 4th section, without intend iug to change the nature of the judgment. Why change it, when as in this case, the jury has found the value of the assets in the hands of the heir? Ought he not to be liable for that value? Suppose the change is made and judgment is rendered against t ie heir, to tie levied of the estate descended, and before execution, the heir alienates the estate, what then shall the plaintiff do to obtain satisfaction? if the principles of the opinion are carried out, the plaintiff must sue the heir for a devastavit, and then the value of the estate descended, must be found by the jury, and for the value so found, the court will rentier judgment personally against the heir. Why not let the jury find the value of the estate descended in the first suit, as has been done in this case, under an appropriate averment in the declaration, and save the expense and trouble of a second action? The presumption of law is, that the jury will do the heir *362 justice in their finding, and that he will not he per■sonally charged with a larger sum than he ought to pay. Why confide in a jury to assess the value when the heir is sued for a devastavit in preference to confiding in them in the first trial? There is as much danger of their doing wrong in the one case as the other. If there be any evil to be apprehended, the heir may avoid it by confessing the action and showing the certainty of assets, and if he does not do this I can perceive no reason under the statute, why the value of the estate descended, may not be ascertained on the first trial, and judgment rendered accordingly in personam. It is my opinion, that such course is sanctioned both by the policy and spirit of the statute, and that there is nothing to be found in the latter, which forbids it,'and hence, I would affirm the judgment.
j^S5ent
Dissent.
This court, heretofore, has had difficulty in applying the act of 1811, to heirs in any case. To give it the application which I have pointed out, will, It seems to me, meet the intention of the legislature, and rentier the statute conducive to the ends of justice. To go farther, and make it operate so as to require two suits instead of one, in order to get at the estate descended, or its value, tends to procrastinate anti defeat justice. Such a construction ought not to be allowed, unless it had been imperiously required by the language of the act. It will be necessary, in all cases since the act of 18U, that the jury should as in this case, find the value of the estate descended, so that the judgment may he rendered personally, against the heirs.
That the act of 1 SI 1, ought not to be construed, “so as to affect the mode of entering the judgment,” was expressly decided by the court, in the case of Keizer’s, heirs vs. Adams, I Marshall, 315, and I iiave met with no subsequent case, which overrules that decision, when applied to the facts of this case Carneal’s heirs vs. Day &c. II Litt. 397, is a case where the heirs were not bound at common law, and where the bill did not allege that the heirs had assets by descent, and consequently, there was no finding of assets, to any value. I therefore look upon the doc *363 trines for which I contend, as having been heretofore sanctioned by this court. If a plaintiff takes judgment against an heir, to be levied of the estate descended, when he might take it in personam, by proving the value of the estate, it could not be error to the prejudice of the heir.
I will put one case and dismiss the subject. Since the act of 1819, (Digest 15.37,) executors and administrators cannot be sued after .distribution and the settlement of their accounts, in certain cases. The creditor must look to the distributee. Now suppose the executor passes to the heir, a female slave, worth $300, that she lives 10 years, having five children, in the mean time, and then dies. The heir, cannot, f think be made answerable to the creditor for the value of the increase, but I think he cannot escape paying the value of the mother. In this case can any reason be assigned why lie should not he made to pay the value of the slave descended in the first suit. A judgment to be levied of the estate descended, can never be productive, because the slave was dead, before it was rendered. Here then the first suit is altogether useless, except as it may lay the foundation for the second. I cannot consent to double expense and procrastination, when there is no reason for it, except the possibility that the jury under my rule, may value the estate higher than the price it would bring, under the sheriff’s hammer, and when at last, it must come to the rule for which I contend.